**Carl N. GERMAN, Appellant**

v.

**ZONING BOARD OF ADJUSTMENT.**

Commonwealth Court of Pennsylvania.

Argued Feb. 14, 2012.

Decided April 9, 2012.

Carl N. German, pro se.

Edward A. Taraskus, Philadelphia, for appellee Mixto, Inc.

BEFORE: PELLEGRINI, President Judge, and BROBSON, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge BROBSON.

Appellant Carl N. German (Objector) appeals from an order of the Court of Common Pleas of Philadelphia County (trial court), affirming an order of the Philadelphia Zoning Board of Adjustment (Board). The Board's order granted, in part, a petition filed by Mixto, Inc. (Mixto), a restaurant and bar, seeking permission to extend its business hours to 2:00 a.m. every day. We reverse the trial court.

Mixto is located at 1141–43 Pine Street in Philadelphia. In April 2001, the Board granted a variance, enabling the owner of the property, Jorgi Mosquera (Owner), to construct a two-story addition on the property and to use the property as a restaurant. The Board included as a condition in granting the variance that Owner limit the hours he operates Mixto to 8:00 a.m. to 11:00 p.m. Monday through Thursday and 8:00 a.m. to 12:30 a.m. on Friday, Saturday, and Sunday.

In April 2008, Mixto submitted to the City's Department of Licenses and Inspections (Department) an application for Zoning/Use Registration Permit, to allow Mixto and its bar to operate until 2:00 a.m. daily. The Department denied the application, and Mixto appealed that decision to the Board. Before the Board, Mixto indi-

cated that it was not seeking a variance, but rather modification of the Board's original limitations on Mixto's operational hours. (Reproduced Record (R.R.) at 34a.)

The Board determined that Mixto was entitled to a modification of the original 2001 conditions attached to its grant of the variance. The Board found that "the increasing number of restaurants that are open until 2 a.m. in the neighborhood East of Broad Street, as well as Center City as a whole, is a changed circumstance which makes an extension of hours appropriate on Thursday, Friday and Saturday nights only." (Finding of Fact No. 32.) The Board also determined that "[Mixto did not show] that the adverse effects of the national and local economic difficulties are such as to require that it be granted relief from the limits imposed on its hours of operation on Sunday through Wednesday nights." (Finding of Fact No. 33.) Based upon its factual determinations, the Board concluded that "[Mixto] has sustained [its] burden of proving a proliferation of restaurants open until 2 a.m. and the national and local economic contraction, which are changed circumstances that make the previously imposed limitation of hours inappropriate." (Conclusion of Law No. 3.) The Board also concluded that, based on the record as a whole, permitting Mixto to extend its hours to 2:00 a.m. on Thursday through Saturday evenings "will not injure the public because, although some individuals may suffer inconvenience, there will be at least an equal amount of benefit to them and other members of the public." (Conclusion of Law No. 5.)

Objector appealed the Board's decision to the trial court. The trial court conducted a hearing on the appeal, during which no party sought to submit additional evidence. The trial court considered: (1) whether Objector had standing to appeal the Board's decision; (2) whether the record created before the Board lacked sufficient evidence to support the Board's necessary factual determinations; and (3) whether the Board misapplied the pertinent legal standard in considering Mixto's application to modify the conditions of the variance.

The trial court issued an order affirming the Board's decision, and Objector appealed to this Court. Objector filed a statement of matters complained of on appeal, and the trial court issued an opinion indicating that economic downturn and competition constituted sufficient changed circumstances to support the requested modification. The trial court also accepted the Board's rationale regarding the balance of public benefits falling in favor of permitting Mixto's request for extended hours or operation.

■ In his appeal,[1] Objector raises the following issues: (1) whether the Board erred in concluding that increased competition and a downturn in the economic climate are sufficient to establish a change in circumstances necessary for modification of conditions imposed in granting an earlier variance; (2) whether the record contains sufficient evidence to support the factual findings concerning the economic downturn and increased competition that Mixto relied upon as a basis for the modification; and (3) whether the Board erred in concluding that the record contained sufficient evidence to support its conclusion that the grant of the requested modification would not injure the public.

1. Where a trial court takes no additional evidence in an appeal from a decision of the Board, this Court is limited to considering whether the Board erred as a matter of law or abused its discretion. *Singer v. Zoning Bd. of Adjustment,* 29 A.3d 144 (Pa.Cmwlth.2011).

In *Ford v. Zoning Hearing Board of Caernarvon Township,* 151 Pa.Cmwlth. 323, 616 A.2d 1089 (1992), this Court considered a property owner's request to remove conditions that a zoning hearing board had attached to its grant of a variance. The conditions associated with the original zoning approval in *Ford* were deed restrictions preventing further subdivision of a tract of land as a condition for the grant of a variance. The change in circumstances involved in *Ford* was a proposal by the property owner to re-subdivide its land in such a manner that the newly subdivided lots would satisfy all of the dimensional criteria of the zoning ordinance.

In analyzing the issue, we referred to and quoted from Robert Ryan's treatise on zoning and land:

> An owner which wishes to obtain a modification of a condition which has become final can obtain relief if he establishes:
>
> (1) Either grounds for traditional variance (*Saber* [*v. Zoning Hearing Bd. of Roaring Spring Borough,* 106 Pa. Cmwlth. 389, 526 A.2d 464 (1987)]) or changed circumstances which render the condition inappropriate (*Amoco* [*Oil Co. v. Zoning Hearing Bd. of Middleton Twp.,* 76 Pa.Cmwlth. 35, 463 A.2d 103 (1983)]); and
>
> (2) Absence of injury to the public interest.

*Ford,* 616 A.2d at 1092 (quoting 2 Robert S. Ryan, Pennsylvania Zoning Law and Practice, § 9.4.20). The Court quoted further from Ryan's treatise, where he observes that "board-imposed conditions are not provisions of the zoning ordinance, but rather condition[s] designed by the zoning board to protect the public interest in the particular case, and nothing more. Accordingly, the better approach is to require only that the applicant proves that the condition no longer promotes the public interest.' Ryan, at 105, vol. 2." *Id.* at 1091–92.

This Court, in applying this approach, concluded in *Ford* that the property owner demonstrated a clear change in circumstances by virtue of the proposed re-subdivision, which would result in compliance with the ordinance. We opined that the change in circumstances rendered the original deed restrictions inappropriate, because the newly created lots would conform to all ordinance requirements and the removal of the restrictions would not result in any harm to the public. The standard the Court applied in *Ford* reflects a respect for the finality of an administrative body's initial analysis of a particular set of circumstances when it decides to grant a variance with conditions, but also acknowledges that changes in circumstances sometimes make conditions no longer appropriate.

▇▇▇▇ Because, as noted above, conditions imposed by a zoning hearing board are presumed to be for the purpose of protecting the public interest, when a party demonstrates a change in circumstances related to the land at issue which indicates that the conditions are no longer appropriate for the protection of the public's interest, a zoning hearing board may re-evaluate the conditions it originally imposed. If a party demonstrates a change in circumstances, then a reviewing body may proceed to consider whether the original conditions continue to serve the function of protecting the public interest that gave rise to the particular conditions in the first place. The question at the heart of the inquiry is what changes in circumstances render the conditions *no longer appropriate.*

Owner asserts that both the economic downturn and competition have resulted in

changed circumstances, and we will first consider whether the evidence in the record demonstrates that increased competition from other restaurants has resulted from changes in the hours of operation of other restaurants following the opening of Mixto. At the outset, we reiterate that the record must provide some factual basis with regard to changes relating to the hours of operations of other competing restaurants. In order to provide a proper contextual framework that would demonstrate a change of circumstances resulting from the hours other restaurants are permitted to operate, Owner was required to establish the hours of operation of those other establishments at the time Mixto opened and that the hours of operation of those other restaurants *changed* following Mixto's opening. If Owner failed to offer evidence that the hours of operation of other restaurants changed *after* Mixto opened, then there is no frame of reference from which the Board could properly conclude that a difference in hours of operation occurred that would justify a conclusion that the original variance condition is no longer appropriate.

■ During the Board's hearing, the only evidence Owner offered in support of his assertion of changed circumstances was his own testimony that "[e]verybody opens to 2:00 [a.m.] and I feel like I'm the only one with restrictions on it. And they're clobbering me so badly I had to do something about it." (R.R. at 37a.) The only other apparent witness during the hearing was Carl Engelke, the Vice–President and Zoning Chair of Washington Square West

Civic Association. Mr. Engelke's testimony supports the following facts regarding restaurants that all parties appear to agree are in the area of Mixto: (1) Valanni on Spruce Street is open until 2:00 a.m., but that restaurant and its hours of operation pre-date the establishment of Mixto; (2) Effie's (a bring-your-own-bottle restaurant) closes by 11:00 p.m. most nights; and (3) Tria[2] is open until 2:00 a.m. on weekends. This is the sole evidence regarding other restaurants.

This evidence, however, provides no context as to the hours of operation of those other restaurants at the time the Board granted Mixto the variance versus their hours of operation at the time Mixto applied to have its hours of operation extended. Such evidence is both relevant and necessary for purposes of determining whether the hours of operation of the other restaurants constitute a change of circumstances. There is also a lack of any record evidence as to the proximity of those restaurants to Mixto or the zoning districts within which they are located. Without such evidence, the Board could not define the competition area at issue or determine whether the overall characteristic of the area (or areas) has changed, such that the Board could conclude that the original conditions imposed, limiting Mixto's hours of operation, are no longer appropriate.[3]

■ With regard to the question of whether the economic downturn supports the Board's decision, we note that the Board rendered the following factual find-

---

**2.** The transcript of the Board's hearing uses the spelling of "Trio," but we believe this is a reference to a restaurant called "Tria," which, like Valanni's is located on Spruce Street, rather than Pine.

**3.** *See also Appeal of U.S. Aluminum Corp. of Pennsylvania,* 123 Pa.Cmwlth. 376, 553 A.2d

1046 (1989) (holding that vacation of nearby road was irrelevant to whether changed circumstances existed to justify modification of conditions limiting hours of operation of shredder because testimony indicated that surrounding neighborhood had not changed to any substantial degree).

ing: "[Owner] has not shown that the adverse effects of the national and local economic difficulties are such as to require that it be granted relief from the limits imposed on its hours of operation on Sunday through Wednesday nights." (Finding of Fact No. 33.) Based, in part, on this factual finding, the Board inconsistently concluded that "[Owner] has sustained his burden of proving a proliferation of restaurants open until 2 a.m. and the national and local economic contraction, which are changed circumstances that make the previously imposed limitations of hours inappropriate." (Conclusion of Law No. 3.) The Board does not explain how Owner established, through the evidence in the record, that the economic downturn has caused a change in circumstances and how that factor supports a conclusion that the original conditions imposed upon Mixto are no longer appropriate.

Even if the economic downturn is relevant to the question of whether a change in circumstances makes the conditions no longer appropriate, after reviewing the evidence of record, we conclude that the evidence is insufficient to demonstrate that economic downturn has impacted Mixto or that Mixto's alleged problems arise from competitive disadvantages based upon hours of operation. The only *comments* in the notes of testimony regarding the economy came from Mixto's counsel, who referred to a general economic downturn. This is simply insufficient in any light to support factual determinations that the alleged downturn has created a change in circumstances that could be remedied by increased hours of operation. The Board appears to have accepted counsel's comments as if they were evidence.

Further, as indicated above, the testimony in the record does not provide support for the Board's determination that there is a "proliferation" of restaurants open until 2:00 a.m. (Conclusion of Law No. 3.) Rather, there is testimony that Valanni's has had such hours of operation since *before* Mixto opened. The testimony regarding Effie's hours of operation was not definitive, and the only other restaurant mentioned in the record, Tria, is only open until 2:00 a.m. on weekends. Given the lack of context and the paucity of testimony clearly describing hours of operation, we view the evidence as insufficient with regard to the question of whether the economic downturn supports the conclusion that this alleged change in circumstances renders the limitation of Mixto's operational hours inappropriate.

As with our discussion above regarding the hours of operation of other restaurants, the factual findings provide no frame of reference from which the Board could properly conclude that economic downturn resulted in a change of circumstances that render the original variance condition no longer appropriate. We note, in passing, that economic downturns may favor certain business, and the record is simply insufficient to support an inference that the economic downturn constitutes a relevant change in circumstances in this case.

Based upon the foregoing discussion, we conclude that the Board's necessary factual determinations are not supported by substantial evidence. Therefore, even if economic downturn and competitive disadvantage are relevant factors in considering whether a change in circumstances has occurred, the Board erred in concluding that Mixto established, through the introduction of *evidence* at the Board's hearing, a change in circumstances that would demonstrate that the conditions imposed are no longer appropriate, such as to justify the modification of the hours-of-operation limitation contained in the variance.

Accordingly, we reverse the trial court's order, affirming the Board's order granting Mixto's request to modify the conditions contained in the 2001 variance granted to Mixto.

### ORDER

AND NOW, this 9th day of April, 2012, the order of the Court of Common Pleas of Philadelphia County is REVERSED.